## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WARREN JAMES LEWIS,** | ) | |
| **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO. 14-00581-CG** |
| **v.** | ) | |
| | )| **CRIMINAL ACTION NO. 12-00154-CG-N** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Warren James Lewis ("Lewis"), a federal prisoner proceeding *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 65[1]), accompanied by a supporting memorandum and exhibits (Doc. 63 at 19-49; Doc. 63-1; Doc. 63-2), challenging this Court's judgment against him in the above-styled criminal action. The United States of America (hereinafter, "the Government") has filed a response in opposition (Doc. 69) to the § 2255 motion, and Lewis has timely filed a reply (Doc. 70) to the response.

Lewis's § 2255 motion is now under submission and is ripe for adjudication. Under S.D. Ala. GenLR 72(b), this matter has been referred to the undersigned Magistrate Judge for the holding of an evidentiary hearing, if necessary, and for entry of a report and recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, and S.D. Ala. GenLR 72(a)(2)(R). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Lewis's § 2255 motion (Doc. 65) be **DENIED**

---

[1] All docket citations (Doc. __) herein refer to the docket of the above-styled criminal action.

without an evidentiary hearing and that this matter be **DISMISSED with prejudice**.   Should that recommendation be adopted, the undersigned further **RECOMMENDS** that Lewis be found <u>not</u> entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I.    Applicable Background

On June 28, 2012, the Grand Jury of this district court issued a one-count indictment against Lewis, charging the offense of knowingly transporting a minor in interstate commerce with the intent of engaging in unlawful sexual activity "on or about December 25, 2011," in violation of 18 U.S.C. § 2423(a).   (Doc. 1).   On September 5, 2012, attorney Richard D. Yelverton, Esq. ("Yelverton"), a member of this Court's CJA Panel, was appointed to represent Lewis, who was then arraigned and entered a plea of not guilty.   (*See* Docs. 10, 12).   On October 18, 2012, Lewis changed his plea and entered a plea of guilty to the indictment (*see* Doc. 23), pursuant to a written plea agreement (Doc. 22).   On January 15, 2013, the Court, rejecting the Government's agreed-upon recommendation to a sentence at the low end of the guidelines, sentenced Lewis to 456 months imprisonment, to be followed by a lifetime of supervised release with special conditions.   (*See* Doc. 32).

On January 24, 2013, Yelverton filed a notice of appeal on Lewis's behalf (Doc. 34), followed by a motion to withdraw as counsel (Doc. 35).   The Court granted Yelverton's motion to withdraw and appointed Lewis new counsel on appeal.   (*See* Doc. 38).   Appellate counsel subsequently moved to withdraw as counsel, filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).   (*See* Doc. 61).   The

Court of Appeals for the Eleventh Circuit, agreeing upon "independent review of the entire record" that there were "no arguable issues of merit," granted appellate counsel's motion withdraw and affirmed Lewis's conviction and sentence (*see* Doc. 61), issuing judgment on December 18, 2013 (Doc. 62). Lewis sought no review of that judgment with the United States Supreme Court.

On December 9, 2014 (the date Lewis certifies under penalty of perjury that he delivered it to prison officials for mailing), Lewis filed his initial § 2255 motion (Doc. 63).[2] At the Court's direction (Doc. 64), Lewis timely filed a new § 2255 motion on this Court's form (Doc. 65).[3] Lewis was expressly cautioned that his "new petition will supersede his original petition; therefore, [Lewis] shall not rely upon his original petition." (Doc. 64).[4] However, at Lewis's request (Doc. 66), the undersigned incorporated into his new § 2255 motion the memorandum and exhibits attached to the initial § 2255 motion (Doc. 63 at 19-49; Doc. 63-1; Doc. 63-2). (*See* Doc. 67).

In the factual resume that accompanied his plea agreement, dated October 17, 2012, Lewis admitted, *inter alia*, to the following:

---

[2] The Government concedes that, under the "prison mailbox" rule, Lewis's motion was timely filed under 28 U.S.C. § 2255(f). (*See* Doc. 69 at 5).

[3] *See* Rule 2(c) of the Rules Governing Section 2255 Cases in the United States District Courts (A § 2255 "motion must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule. The clerk must make the forms available to petitioners without charge."); SD ALA LR 83.9(d)(1) ("All pleadings filed by persons proceeding *pro se* shall be filed on forms provided by the court, or in a form substantially conforming to such forms, unless otherwise ordered by the court.").

[4] (*See also* Doc. 67 at 2 ("As Lewis's new § 2255 motion (Doc. 65) has superseded the Initial § 2255 motion (Doc. 63 at 1-18), the Court will not further consider the allegations in the Initial § 2255 motion.")).

From witness interviews, cell phone records, cell tower location data, and the recollections of the children of the recent abuse, FBI agents were able to establish that LEWIS picked the children up from his [sic] Thomasina Lewis's house in Mobile on December 24, 2010 and took them to a trailer in Gulfport, Mississippi. The cellular tower data analysis confirmed that LEWIS was in Gulfport at 9:24 a.m. on Christmas morning. At 2:58 p.m. he was in Mobile, and by 4:49 p.m. he had returned to Gulfport. Witness interviews confirmed this was the trip LEWIS took to pick up the children and bring them to Mississippi. The last night of their visit, New Year's Eve, LEWIS went into the bedroom where the two girls were sleeping. This night was the only night of their visit that LEWIS's girlfriend was not in the trailer with them. A.S. [Thomasina Lewis's minor son, Lewis's stepson] told investigators that he remembers seeing LEWIS go into the room where the girls were sleeping alone. LEWIS forced L.L. [Lewis and Thomasina Lewis's elder minor daughter] into performing oral sex on him, then anally raped her. Then, LEWIS anally raped E.L. [Lewis and Thomasina Lewis's younger minor daughter]. Both girls witnessed the abuse, and provided consistent statements to investigators.

(Doc. 22 at 12).

Lewis, in bringing the present § 2255 motion, has presented a Judgment of Divorce dated November 22, 2010, from the Circuit Court of Mobile County, Alabama, between Lewis and Thomasina Lewis. (Doc. 63 at 42 – 48). In particular, Lewis points to the following provision of that Judgment: "The custodial parent [Thomasina Lewis] shall keep the children in his [sic] care during the week before Christmas until 3:00 p.m. on Christmas Day. Thereafter, the non-custodial party [Lewis] shall have visitation for one week at Christmas from December 25, at 3:00 p.m. until January 2 at 3:00 p.m." (*Id.* at 43). He has also presented two affidavits dated November 17, 2014 – one from Ashley Austin ("Austin"), and one from Marsha Johnston ("Johnston"). Austin avers in her affidavit (*id.* at 38 – 39) to the following factual allegations:

4

- Austin was Lewis's "live-in girl friend" and was living in his Gulfport residence "exclusively on December 25th, through December 31st, 2010, when Mr. Lewis was alleged to have sexually assaulted his children."

- Lewis went to Alabama on December 25th, 2010, "to pick up his children and bring them back to his said Gulfport residence, pursuant to a Divorce Court Order Custody/Visiting Rights schedule[], where Mr. Lewis, his father and [Austin] spent Christmas with the kids until after December 31st, 201 when Mr. Lewis took his kids back to" Alabama.

- Austin "was interviewed by Federal Agents at an Illinois McDonalds Resturaunt [sic] regarding this matter, whom I advised that I was at the residence with Mr. Lewis and the children from before December 25th, through well after December 31st, 2010 when Mr. Lewis was alleged to have assaulted the kids." Austin "further advised the Federal Agents that the assaults was [sic] virtually impossible as Mr. Lewis, the Children and I were constantly together during this whole visit, and that I am willimg [sic] to testify in court to these facts."

- It has recently come to Austin's attention, around the time she executed the affidavit, that Lewis was convicted in this criminal action "for these alleged sexual assaults under the premises that I was not there at the Gulfport residence with Mr. Lewis on the Night of the alleged assaults, December, 31st, 2010, to which I make this affidavit in correction of those facts, as I specifically advised the Federal Authorities."

- Austin is willing to testify to these fact, "as there is no way possible Mr. Lewis had the time to commit the said alleged assaults."

Johnston avers in her affidavit (*id.* at 40 – 41) to the following factual allegations:

- Johnston is Austin's mother and lived across the street from Lewis and his father in Gulfport.

- Johnston, Austin, and Johnston's husband (Austin's stepfather) made plans to spend December 25, 2010, with Lewis, Lewis's father, and Lewis's children and "spent several Hours of the days during Christmas."

- Johnston confirms that Austin was Lewis's girlfriend and lived at his Gulfport residence from before December 25, 2010, until after December 31, 2010.

- After Lewis was arrested, Johnston "was interviewed by Federal Agents in the state of Illinois who I had advised that My daughter was infact [sic] at Mr. Lewis' Gulfport residence on December 31st, 2010 which I later found out was the date that Mr. Lewis was supposed to have sexually assaulted his children."

- Johnston is willing to testify to confirm that Austin "was constantly present at Mr. Lewis' Gulfport Residence, from December 25th, 2010 until Mr. Lewis was arrested and taken away after December 31st, 2010."

## II.  <u>Claims for Relief</u>[5]

Lewis raises four claims for relief in his § 2255 motion, each based on the alleged "newly discovered evidence" in the divorce decree and/or affidavits:[6]

<u>Claim 1</u> – Trial counsel Yelverton rendered unconstitutional ineffective assistance by failing "to subject the USA's case against Lewis to a meaningful adversarial testing" by "induc[ing] Lewis to plead guilty to an offense of which Lewis is not guilty" and "fail[ing] to investigate and/or produce exculpatory evidence." (Doc. 65 at 4).

<u>Claim 2</u> – Lewis is "factually innocent" of the charge to which he pled guilty because: "(a) newly discovered evidence establishes that Lewis' District Court appointed attorney and the United States withheld evidence exculpatory to the elements of the offense for which Lewis has been charged; (b) Lewis' guilty plea was involuntary due to misguidance; (c) the Court accepted the plea without factual basis." (*Id.* at 5)

<u>Claim 3</u> – The Government "withheld exculpatory evidence from their investigative files" "establishing Lewis was not at the scene for the purpose for which he was convicted" and "which established that Lewis did not travel in interstate for the purpose of engaging in illegal sexual acts with a minor." (*Id.* at 7).

---

[5] The undersigned abides by the Eleventh Circuit's directive to "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).

[6] (*See* Doc. 65 at 10 ("All grounds in this motion have never been presented to any federal court as they are based upon newly discovered facts and evidence of an exculpatory nature and have never been determined on their merits.")).

**Claim 4** – The Court "does not have subject matter jurisdiction to sustain Lewis' conviction for the instant offense" because "the factual innocence nature of the action…due to ineffective counsel and misconduct of the prosecutor, has never been determined." (*Id.* at 8).

### III.   Applicable Law

#### A.   *General Standards in § 2255 Proceeding*

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).  Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a

federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)). "Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice. Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232-33 (internal citations, quotations, and footnote omitted).

> Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States,* 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills[ v. United States*], 36 F.3d [1052,] 1055[ (11th Cir. 1994)]; *Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989). This rule generally applies to all claims, including constitutional claims. *See Reed v. Farley,* 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)); *see also Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977) (applying cause and prejudice standard to constitutional

claims).

> A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. *Bousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998); *Mills,* 36 F.3d at 1055; *Cross v. United States,* 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene,* 880 F.2d at 1305; *Martorana v. United States,* 873 F.2d 283, 284 (11th Cir. 1989); *Parks v. United States,* 832 F.2d 1244, 1246 (11th Cir. 1987). Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if " 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Mills,* 36 F.3d at 1055 (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986)); *see also Bousley,* 523 U.S. at 622, 118 S. Ct. at 1611; *Jones,* 153 F.3d at 1307.

*Id.* at 1234-35 (footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted).

10

### B.    *Ineffective Assistance of Counsel*

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984).   "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "   *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694).   " 'Conclusory allegations of ineffective assistance are insufficient.' "   *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)).   Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa."   *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).   *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.   The *Strickland* test is not easily

met; as we have said, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient

> to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at
> 2068. Although this standard is difficult to meet, it is significant that a
> petitioner must show only a reasonable probability that the outcome
> would have been different; he "need not show that counsel's deficient
> conduct more likely than not altered the outcome in the case." *Id.* at
> 693, 104 S. Ct. at 2068. When evaluating this probability, "a court
> hearing an ineffectiveness claim must consider the totality of the
> evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

### C.    *Effect of Guilty Plea*

The " 'concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.' " *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992). *See also, e.g., United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (" 'A guilty plea, since it admits all the

elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.' " (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam)); *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011) (" 'Generally, entering a guilty plea waives a defendant's right to all non-jurisdictional challenges to a conviction.' " (quoting *United States v. Bonilla,* 579 F.3d 1233, 1240 (11th Cir. 2009)). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also Bousley*, 523 U.S. at 618 ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Moreover, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley*, 523 U.S. at 621. *Accord United States v. Pearl*, 288 F. App'x 651, 655 (11th Cir. 2008) (per curiam) (unpublished).

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.' " *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting *McMann[ v. Richardson]*, 397 U.S. [759,] 770, 90 S. Ct. [1441,] 1448[ (1970)]). The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Slicker v. Dugger*, 878 F.2d 1380, 1381 n.1 (11th Cir. 1989) (per curiam); *Holmes v. United States*, 876 F.2d 1545, 1551 (11th Cir. 1989); *McCoy v.*

*Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986) (per curiam)…

…

…*Hill* clarified the *Strickland* second or "prejudice" requirement in the context of guilty pleas: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59, 106 S. Ct. at 370; *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) (per curiam); *see Long v. United States*, 883 F.2d 966, 968 n.4 (11th Cir. 1989) (per curiam); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2846, 101 L. Ed. 2d 884 (1988); *see also Holmes*, 876 F.2d at 1553, *Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987) (These cases were remanded to the district court to determine if accurate, rather than incorrect, information by the defense counsel as to the length of sentence would have changed the defendant's plea.); *cf. Betancourt v. Willis*, 814 F.2d 1546, 1549 (11th Cir. 1987) (This court affirmed the district court's granting a habeas corpus petition based upon its conclusion that petitioner's plea was not voluntary and that his counsel provided ineffective assistance because the evidence was "uncontroverted that petitioner was completely unaware of the ultimate consequences of his plea because his counsel misrepresented the existence of a sentence reduction agreement."). The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.[7]

---

[7] *Hill* continued:

> Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the

474 U.S. at 59, 106 S. Ct. at 370; *McCoy*, 804 F.2d at 1198–99.

The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973); *see Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir.) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."), *cert. denied*, 469 U.S. 837, 105 S. Ct. 134, 83 L. Ed. 2d 74 (1984). The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in his counsel's advice regarding the plea. *McMann*, 397 U.S. at 774, 90 S. Ct. at 1450; *Tollett*[ *v. Henderson*], 411 U.S. [258,] 267, 93 S. Ct. [1602,] 1608[ (1973)]; *see Hill*, 474 U.S. at 56, 106 S. Ct. at 369 ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). Without "reasonably effective assistance of counsel in connection with the decision to plead guilty," a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. *McCoy*, 804 F.2d at 1198; *Scott*[ *v. Wainwright*], 698 F.2d [427,] 429[ (11th Cir. 1983)]. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. *Scott*, 698 F.2d at 429. "Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants." *Id.* (emphasis added); *see McMann*, 397 U.S. at 771, 90 S. Ct. at 1449; *Long*, 883 F.2d at 969.

---

resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. *See, e.g.*, *Evans v. Meyer*, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As []explained in *Strickland v. Washington*, []these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.,* 466 U.S., at 695, 104 S. Ct., at 2068.

474 U.S. at 59-60.

> The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial. *McMann*, 397 U.S. at 769–70, 90 S. Ct. at 1448. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam); *Downs–Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Tafero*, 796 F.2d at 1320; *Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir. 1986), *cert. denied*, 481 U.S. 1042, 107 S. Ct. 1986, 95 L. Ed. 2d 825 (1987)…

*Stano v. Dugger*, 921 F.2d 1125, 1149-51 (11th Cir. 1991) (en banc) (footnote omitted). *Accord, e.g., Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993) ("The Supreme Court has held 'that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.' *Hill*, 474 U.S. at 58, 106 S. Ct. at 370. Under the *Strickland* test, Garrett initially must show 'that counsel's representation fell below an objective standard of reasonableness.' *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). While it need not be errorless, counsel's advice '*must be within the realm of competence demanded of attorneys representing criminal defendants.*' *Stano*, 921 F.2d at 1151. Providing meaningful advice on the options available to a defendant obligates counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. *Hill* modified the second part of the *Strickland* test in the

context of a guilty plea. Garrett 'must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial.'  474 U.S. at 59, 106 S. Ct. at 370.").  In claiming prejudice

under *Strickland*, "[a] movant must allege facts that would prove that a decision not

to plead guilty 'would have been rational under the circumstances.' "  *Hernandez v.*

*United States*, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting *Padilla v. Kentucky*,

559 U.S. 356, 372 (2010)).

> [P]lea bargaining retains its benefits of certainty and efficiency "only if
> dispositions by guilty plea are accorded a great measure of finality."
> *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136
> (1977); *see id.* ("To allow indiscriminate hearings in federal
> postconviction proceedings ... for federal prisoners under 28 U.S.C. §
> 2255 ... would eliminate the chief virtues of the plea system—speed,
> economy, and finality."). While § 2255 exists "to safeguard a person's
> freedom from detention in violation of constitutional guarantees," ...
> "[m]ore often than not a prisoner has everything to gain and nothing to
> lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72,
> 97 S. Ct. 1621. As a result, "the representations of the defendant, his
> lawyer, and the prosecutor at [a plea] hearing, as well as any findings
> made by the judge accepting the plea, constitute a formidable barrier
> in any subsequent collateral proceedings." *Id.* at 73–74, 97 S. Ct. 1621;
> *see id.* at 80 n. 19, 97 S. Ct. 1621 (explaining that if the record reflects
> the procedures of plea negotiation and includes a verbatim transcript
> of the plea colloquy, a petitioner challenging his plea will be entitled to
> an evidentiary hearing "only in the most extraordinary
> circumstances"). "The subsequent presentation of conclusory
> allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible."
> *Id.* at 74, 97 S. Ct. 1621.

*Winthrop-Redin*, 767 F.3d at 1216.

In sum, because " '[s]olemn declarations in open court carry a strong

presumption of verity[,]' *Blackledge,* 431 U.S. at 74, 97 S. Ct. 1621[,]" when a

defendant "ma[k]e[s] statements under oath at a plea colloquy, 'he bears a heavy

burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (per curiam)." *Id.* at 1217 (some alterations added). *Accord, e.g.*, *United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."); *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (per curiam) (unpublished) ("We apply a 'strong presumption' that statements made by a defendant during his plea colloquy are true, *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994); therefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.' *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988).") . Nothing in the record shows that Cardenas has satisfied his burden of showing that his sworn statements made during the plea colloquy-including that no one had predicted what sentence he would receive-were false; and we reject his claim that his guilty plea was involuntary.").

## IV.   Analysis

### A.   *Ineffective Assistance of Counsel (Claim 1)*

As to Claim 1, Lewis asserts that Yelverton "failed to investigate and/or produce exculpatory evidence in Lewis' favor" and instead "induced Lewis to plead Guilty to the underlying offense with full knowledge that evidence will exist exposing Lewis' innocence to the charged conduct…"  (Doc. 63 at 24 – 25).  Lewis claims he advised Yelverton that Austin "was at the residence with Lewis and his father on December 31, 2010, and []the reasons he went to get his children was to

19

exercise his Parental Visiting Rights, pursuant to Court order in Mobile County, Alabama, and []that the alleged sexual assaults never happened." (*Id.* at 26). To this, Yelverton purportedly advised Lewis that Austin "was no longer at the residence, and could not be located, thus []a Jury wouldn't believe him due the age and number of the children, and []thus, whether Lewis actually did it or not would be irrelevant." (*Id.* at 26 – 27).

According to Lewis, the November 22, 2010 Judgment of Divorce Lewis he has presented – in particular, the provision regarding Lewis's Christmastime visitation rights – would have "defeat[ed] the crucial 3rd element of" his crime, as it "would have shown that the purpose of Lewis' trip to Alabama to Mississippi was not to indulge in sexual acts with a minor, but to exercise his visiting rights, and eliminating the 1st and 2nd prongs of the underlying statute." (Doc. 63 at 28). Instead, "Yelverton induced Lewis to believe that the testimonies of the children were enough to cause a conviction regardless of the truth. Thus, Yelverton took Lewis before this Court believing that the allegations of sexual assaults were the only thing that mattered under the Federal Criminal Codes, when in reality, the [purpose] of the interstate activity was the key element…" (*Id.* at 30 – 31 (brackets in original)). Put another way, Lewis claims that Yelverton misrepresented the significance of the "interstate" element of the offense, causing Lewis to believe when he entered his plea that "the Interstate element of the offense [was] the alleged [sex act itself], and not [intent]; nor [purpose], as Mr. Lewis understood the language of the statute, and argued with Counsel." (Doc. 70 at 6 (some brackets in original)).

In sum, Lewis claims that Yelverton failed to recognize that the evidence, in particular the Christmas visitation provision in the Judgment of Divorce, would not have supported a determination beyond a reasonable doubt that "the primary purpose of that trip was to engage in illegal sex acts with the victims." (*Id.* at 70).

Liberally construing these allegations, the undersigned finds that Lewis is asserting Yelverton was ineffective in two ways:

1. Yelverton erroneously advised Lewis that the Government would not have to prove at trial all elements of an offense under § 2423(a) – specifically, the element that Lewis had transported the minor victims "in interstate or foreign commerce … with intent" to sexually assault them – and that the testimony of the minor victims regarding the abuse was all that was needed for a conviction; and

2. Yelverton failed in his duty to investigate by not obtaining a copy of the November 22, 2010 Judgment of Divorce, which would have shown that Lewis was not transporting his minor children in interstate commerce for the purpose of sexually assaulting them, but was only exercising his Christmastime visitation rights.[8]

The underlying premise of both these claims of ineffective assistance is Lewis's belief that the Government was required under § 2423(a) to prove that Lewis had the intent to sexually assault his minor daughters at the time he

---

[8] Lewis does not argue that Yelverton was ineffective for failing to locate and interview Austin and/or Johnston.  Indeed, Lewis acknowledges in his reply brief that Yelverton's assertion that he could not locate Austin and Johnston "would be feasible since the government investigators [FBI] found them in Illinois and interviewed them…" (Doc. 70 at 9).

transported them across state lines from Alabama to Mississippi.  This belief is incorrect.

In explaining this conclusion, some statutory context and comparison is needed.  Title 18 U.S.C. § 2423(a), the statutory provision under which Lewis was charged and convicted,

is one of four closely related provisions of the federal criminal code. The four are as follows:

**18 U.S.C. § 2421:** Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

**18 U.S.C. § 2423(a): Transportation with intent to engage in criminal sexual activity.**—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

**18 U.S.C. § 2423(b): Travel with intent to engage in illicit sexual conduct.**—A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

**18 U.S.C. § 2423(c): Engaging in illicit sexual conduct in foreign places.**—Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years,

or both.

> Section 2421 is the original Mann Act, as amended in minor respects. Section 2423(a), intended to protect minors from sexual predation, mirrors the Mann Act but imposes more severe penalties. Section 2423(b) … was added to expand the protection of minors still further; it punishes travel in interstate commerce even if no minor is transported, if the purpose of the travel is sex with a minor. (Prosecutors frequently use this section to prosecute persons who cross state lines to rendezvous with minors whom they meet in online chat rooms. See, e.g., *United States v. Buttrick,* 432 F.3d 373 (1st Cir. 2005).) Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor in the course of the trip regardless of what the defendant intended when he set out on it.

*United States v. McGuire*, 627 F.3d 622, 623-24 (7th Cir. 2010)

> The Court of Appeals for the Eleventh Circuit has noted that

> the plain language of section 2423(a) requires only that the defendant knowingly transport a minor with the "intent" of engaging in criminal sexual activity. **It does not require evidence of any "purpose" or "motive" of the interstate travel.** *See United States v. Cole,* 262 F.3d 704, 709 (8th Cir. 2001) (affirming conviction under section 2423(a) after concluding that one of the defendant's purposes for transporting the minor was illegal sexual activity, but noting that the plain language of section 2423(a) does not require any such showing); *United States v. Ellis,* 935 F.2d 385, 391-92 (1st Cir. 1991) (same). Thus, []section 2423(a) merely requires that the defendant have intended to engage in criminal sexual activity with a minor...

*United States v. Hoschouer*, 224 F. App'x 923, 926 (11th Cir. 2007) (per curiam) (unpublished) (emphasis added) (holding that the district court did not err in declining to instruct the jury that, under § 2423(a), "the sexual activity must have been a significant motivating purpose for transporting or traveling with [the minor victim], not just one of the purposes").[9] [10]

---

[9] *See also United States v. Cole*, 262 F.3d 704, 709 (8th Cir. 2001) ("Arguably, when Congress amended the Mann Act in 1986 to remove the commercial nexus and to remove the 'purpose' language, replacing it with the 'intent that such individual engage ... in any

The factual resume accompanying Lewis's plea agreement, which both Lewis and Yelverton "agreed to and signed" (Doc. 22 at 13), advised that, to prove a violation of § 2423(a), the Government must prove:

**First**: The defendant knowingly transported an individual in interstate commerce; and

**Second**: at the time of the transportation, the individual was less than 18 years old; and

**Third**: at the time of the transportation, Defendant intended that the individual would engage in prostitution or other unlawful sexual activity.

(Doc. 22 at 10).[11]   The factual resume cites "Eleventh Circuit Pattern Jury Instruction 93.1 (2010)" as authority for these elements (*see id.* n.1),[12] and indeed

---

[illegal] sexual activity,' Pub. L. No. 99–628, Congress lessened the prosecution's burden, such that it need not prove that illegal sexual activity was a purpose of the interstate transportation at all. *See United States v. Ellis,* 935 F.2d 385, 391–92 (1st Cir.) (discussing the change in the language but declining to decide the impact of the change as the evidence supported the conviction even under the more stringent standard), *cert. denied,* 502 U.S. 869, 112 S. Ct. 201, 116 L. Ed. 2d 160 (1991). Like the court in *Ellis,* we leave for another day the effect of the change in the statutory language because the evidence establishes that illegal sexual activity was at least one of Cole's purposes in transporting M.S. in interstate commerce.").

[10] Unlike § 2423(a), § 2423(b) does have a "purpose of travel" element.  *See Hoschouer*, 224 F. App'x at 926-27 (discussing "the relationship between the purpose and travel elements under" § 2423(b)), which Lewis has attempted to apply to § 2423(a).  This misunderstanding is likely due in part to the tendency of relevant case law to intermingle and conflate § 2423(a)'s "intent" element with § 2423(b)'s "purpose of travel" element, *see infra.*

[11] The Government also presented these as the elements of the crime at Lewis's guilty plea hearing.  (Doc. 59 at 6).

[12] "[T]his Circuit's pattern [jury] instructions, while a valuable resource, are not binding law."  *United States v. Carter*, 776 F.3d 1309, 1324 (11th Cir. 2015) (citing *United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007)).

they do mirror the statement of the elements in that instruction for an offense under § 2423(a).[13] [14]

The Eleventh Circuit has held in Mann Act cases "that dual purposes are sufficient for a conviction, and we 'need not concern ourselves' with whether the illegal purpose was dominant over other purposes. [*Forrest v. United States*, 363 F.2d 348,] 352[ (5th Cir. 1966)[15]]. Our model Mann Act jury instructions reflect this holding. See Eleventh Circuit Model Jury Instruction 79.2, 92.1, **93.1**, 93.2, 93.4 (2010)." *United States v. Lebowitz*, 676 F.3d 1000, 1014-15 (11th Cir. 2012) (per curiam) (emphasis added).[16] *See also United States v. Schumaker*, 479 F. App'x 878,

---

[13]   *See*   www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJuryInstruction.pdf, pp. 531-33 (last visited July 22, 2015).

[14] Pattern Instruction 93.1 further provides that "[t]he Government must prove beyond a reasonable doubt that a person under 18 years old was knowingly transported across state lines by the Defendant and that the Defendant intended at the time for the person under 18 to engage in prostitution or other illegal sexual activity." Additionally, the "Annotations and Comments" to this instruction provide: "The defendant's dominant purpose in transporting the child in interstate or foreign commerce need not be to engage in a sexual act with a child. However, to meet the intent requirement the Government must prove that one of the defendant's motives was to engage in a sexual act with a child. See *United States v. Hoschouer*, 224 Fed. Appx. 923, 925 (2007) (finding that intent requirement of § 2423(a) was met when defendant brought child on interstate trip and evidence supported the conclusion that he did so to facilitate his sexual relationship with her)."

[15] "In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), [the Eleventh Circuit] adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981." *United States v. Lebowitz*, 676 F.3d 1000, 1011 n.3 (11th Cir. 2012) (per curiam)

[16] The defendant in *Lebowitz* was convicted, *inter alia*, of producing child pornography in violation of 18 U.S.C. § 2251(a) and challenged the district court's denial of his requested jury instruction that would have required the jury to find beyond a reasonable doubt that "the making of the visual depiction of sexually explicit conduct was a dominant motive for Defendant's actions toward" the minor. 676 F.3d at 1014. In support, Lebowitz cited *Forrest* and *Mortensen v. United States*, 322 U.S. 369 (1944). The court declined to apply these two "Mann Act cases involving crimes other than the production of child pornography" but alternatively found that, "[e]ven if Mann Act precedent applies to 18

884 (11th Cir. 2012) (per curiam) (unpublished) ("It is unlawful under 18 U.S.C. § 2241(c) to cross a State line with the intent to engage in a sexual act with a person under the age of 12. *See* 18 U.S.C. § 2241(c). The former Fifth Circuit upheld a conviction under the Mann Act, 18 U.S.C. § 2421, based on a showing that 'one purpose' of the defendant's trip was illicit; thus, the court rejected his contention that his immoral purpose was 'merely incidental' to his travel. *Forrest v. United States*, 363 F.2d 348, 349–50 (5th Cir. 1966). []We conclude from the record that the district court did not err by instructing the jury to disregard the language concerning 'merely incidental' purposes for travel when it said to focus, instead, on whether one of the purposes of Schumaker's travel was to engage in a sexual act with an individual under 12 years of age, because the two ideas describe the same notion—whether a purpose for the trip was illicit."); *Hoschouer*, 224 F. App'x at 927 ("In *Forrest v. United States,* 363 F.2d 348, 349 (5th Cir. 1966), the former Fifth Circuit stated that, to convict under the Mann Act, the Government need not prove that the illicit purpose was the sole purpose of the transportation. Instead, it was sufficient that the illicit purpose was 'one of the efficient and compelling purposes in the mind of the accused.' *Id.* at 350. Rejecting the defendant's contention that his immoral purpose was 'merely incidental' and thus insufficient to support the conviction, the court affirmed the trial court's conclusion that 'one purpose' of the trip was for prostitution. *Id.* at 350-52." (footnote omitted)); *United States v.*

---

U.S.C. § 2251(a), refusal to give the requested instruction would not have been error" because "dual purposes are sufficient for a conviction." *Lebowitz*, 676 F.3d at 1014. Thus, Lebowitz's "requested 'dominant motive' language was substantively incorrect, and the district court correctly refused to give the instruction." *Id.* at 1015.

*Donaldson*, 577 F. App'x 63, 66 (2d Cir.) ("The fact that [the defendant] also had a business purpose in making the trips did not preclude a finding of criminal intent[ under § 2423(a)] to sexually assault his minor passengers. *See United States v. Vargas–Cordon,* 733 F.3d 366, 377 (2d Cir. 2013) ('Section 2423(a) is concerned not with why a defendant travels, but rather with the question why he transports a minor.'); *id.* at 375 ('[T]he contemplated unlawful sexual activity need not be the defendant's sole purpose for transporting a minor in interstate or foreign commerce.')."), *cert. denied*, 135 S. Ct. 173 (2014); *United States v. Bonty*, 383 F.3d 575, 578 (7th Cir. 2004) ("[A] defendant may have more than one purpose in the interstate transportation of a minor. *United States v. Vang*, 128 F.3d 1065, 1069–72 (7th Cir. 1997) … The government need only prove that a 'significant' or 'compelling' purpose of the trip—not the dominant purpose—was to commit aggravated assault" to sustain a conviction under § 2423(a)); *United States v. Goodwin*, 719 F.3d 857, 862 (8th Cir. 2013) (" 'The illicit behavior must be "one of the purposes motivating ... the interstate transportation," but need not be the dominant purpose.' *United States v. Cole*, 262 F.3d 704, 709 (8th Cir. 2001) (alteration in original), quoting *United States v. Vang*, 128 F.3d 1065, 1071 (7th Cir. 1997) (interpreting *Mortensen v. United States*, 322 U.S. 369, 376, 64 S. Ct. 1037, 88 L. Ed. 1331 (1944)). 'The sexual activity just may not be merely incidental to the trip.' *United States v. Hoffman*, 626 F.3d 993, 996 (8th Cir. 2010), citing *Cole*, 262 F.3d at 709."), *cert. denied*, 134 S. Ct. 944 (2014); *United States v. Tavares*, 705 F.3d 4, 17 (1st Cir. 2013) ("In order to convict Mr. Tavares of transporting B.B., the Government was

required to prove, among other things, that he had the 'intent that [she] engage in prostitution.' 18 U.S.C. § 2423(a). This element requires proof that 'criminal sexual activity [was] one of the several motives or purposes ... not a mere incident of the trip or trips, but instead was at least one of the defendant's motivations for taking the trip in the first place.' *United States v. Ellis,* 935 F.2d 385, 390 (1st Cir. 1991) (alteration in original) (internal quotation marks omitted).").[17]

The Judgment of Divorce may be considered evidence that <u>one</u> purpose of Lewis's interstate travel was to exercise his Christmastime visitation rights. However, so long as evidence showed that Lewis <u>intended</u> to sexually assault his minor children at some point during the Christmastime trip from Alabama to Mississippi and back, a conviction under § 2423(a) would have been sustained.  *See Cole*, 262 F.3d at 708-09 (8th Cir.) ("[T]o be convicted under § 2423(a), Cole must have transported M.S., age 15 at the time, with the intent to engage in sexual activity with her. Cole's twisted reading of the statute-that he must have intended to go to Florida to violate the Florida statute before he began the interstate journey-is not supported by the language of the statute or the case law construing it. Whether Cole intended to have sex with M.S. in Florida when he transported her out of Arkansas is irrelevant to his conviction. His illicit intent must have been

---

[17] Lewis has cited to *United States v. Causey*, 568 F. App'x 269 (5th Cir. 2014) (per curiam) (unpublished), which states that "18 U.S.C. §§ 2422(a) and 2423(a), (b), and (e), did not require proof of a sexual act but did require proof that engaging in a sexual act was the *primary* purpose of transporting the victim."  568 F. App'x at 271 (emphasis added). *Causey* cites no authority for this assertion, and this broad characterization of multiple statutory provisions is not a holding in the case, but rather was provided as background in *Causey*'s statement of "facts and procedural history."  Regardless, *Causey's* characterization of § 2423(a) is inconsistent with the great weight of other authority, including that of the Eleventh Circuit.

formed only ' "before the conclusion of the interstate state [sic] journey." ' *Reamer v. United States*, 318 F.2d 43, 49 (8th Cir.) (quoting *Mortensen v. United States*, 322 U.S. 369, 374, 64 S. Ct. 1037, 88 L. Ed. 1331 (1944)), *cert. denied*, 375 U.S. 869, 84 S. Ct. 129 (1963)."); *United States v. Vernon*, 723 F.3d 1234, 1252 (11th Cir. 2013) ("The prosecution need not rebut all reasonable hypotheses other than guilt and the jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial." (quotations omitted)).  Lewis admitted in his factual resume that he had indeed sexually abused both daughters while in Gulfport on the Christmastime trip and that such abuse had occurred as early as February or March of 2009.   (Doc. 22 at 12).   Hearing such evidence, a reasonable jury could infer that Lewis intended to sexually assault his minor children on the interstate Christmastime trip.  *Cf. Hoschouer*, 224 F. App'x at 926 ("Defendant []contends that the evidence is insufficient to show that the sexual activity with Kristina was an efficient purpose of the trip, arguing that the purpose of the trip was to flee prosecution in Texas. We disagree. The evidence showed that Defendant and Kristina had sexual intercourse almost every day. The evidence also showed that Defendant refused to allow Kristina to stay behind when he announced his intention to leave Texas. And, Kristina testified that Defendant would have had sex with her had they stayed in Georgia long enough.  []Based on this evidence, the jury could reasonably infer both that Defendant intended to have sex with Kristina before the conclusion of their trip and that one of the motivating purposes of requiring Kristina to accompany him was to facilitate their sexual relationship."

(affirming convictions under §§ 2423(a) and (b)); *Donaldson*, 577 F. App'x at 66 (2d Cir.) ("The three victims' testimony that Donaldson regularly sexually assaulted them on various interstate trucking trips easily supported a finding that he engaged in the charged transportations with the same culpable intent."); *McGuire*, 627 F.3d at 624 ("**It is apparent that if, as the jury found, the defendant had molested Dominick on their travels, he violated sections** 2421, **2423(a)**, and 2423(c). E.g., *United States v. Bonty,* 383 F.3d 575, 578 (7th Cir. 2004); *United States v. Snow,* 507 F.2d 22, 23 (7th Cir. 1974); *United States v. Hitt,* 473 F.3d 146, 150 (5th Cir. 2006). But inexplicably the government charged the defendant only with violating section 2423(b), which requires that the *travel* be for the purpose of engaging in illegal sexual activity." (boldfaced emphasis added)).

Given this abundant authority, Lewis has not shown that Yelverton failed to exercise "reasonable professional judgment" in allegedly advising that the children's testimony regarding their abuse would be enough to satisfy all elements for a conviction under § 2423(a), including the "intent," and in failing to obtain a copy of Lewis's Judgment of Divorce.  Thus, he has failed to show that Yelverton rendered ineffective assistance as to either of these claims.  Given that the children would have been able to testify both to sexual abuse occurring during the Christmastime trip to Gulfport as well as prior sexual abuse, which Lewis admitted the Government could prove in his factual resume, Yelverton's alleged advice that their testimony alone could establish Lewis's intent was likely correct, and was reasonable.  Likewise, while the Judgment of Divorce would have been probative of

Lewis's intent/purpose in making the Gulfport trip, the great weight of authority is that a conviction under § 2423(a) can stand even if there is evidence of dual purposes/intent in the interstate travel. Accordingly, to the extent Yelverton was aware of the Christmastime visitation provision in the Judgment of Divorce, he would not have acted unreasonably in believing that it would have been of little value at trial.

As to Lewis's claim that Yelverton incorrectly advised him that the Government would not have to prove § 2423(a)'s intent element at trial, even assuming this allegation to be true, Lewis has failed to show that he was prejudiced by any such error. Lewis's written plea agreement expressly advised him that the Government "has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt" (Doc. 22 at 2, ¶ 7), and the accompanying factual resume advised him of those elements, *see supra*. Lewis signed both documents, thereby expressly representing that he had "read this Plea Agreement and carefully reviewed every part of it with" Yelverton and that he understood the elements of the charge. (*See id.* at 9 – 10, 13). At his guilty plea hearing, Lewis affirmed in sworn testimony that he had read the plea agreement and that nobody had made any promises outside of the agreement. (*See* Doc. 59 at 4). Lewis has offered no explanation why these representations should now be deemed false. Considering that the written plea agreement correctly advised Lewis of the Government's burden to prove all elements of the offense at trial, and considering that Lewis, having been so advised, proceeded to plead guilty anyway, Lewis's allegations do

not show that, but for Yelverton's advice regarding the Government's burden, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.[18]

The record also affirmatively contradicts Lewis's claim that his decision to plead guilty was based on any of Yelverton's alleged erroneous advice. Lewis's presentence investigation report (to which Lewis filed no objections)[19] states: "[A] statement provided by the defendant's attorney indicates that **Lewis** verbalized his remorse for having committed the offense, and expressed a desire to plead guilty in

---

[18] Lewis makes passing reference to *United States v. Cronic*, 466 U.S. 648 (1984). The Eleventh Circuit has explained that case as follows:

> A petitioner asserting a claim of ineffective assistance of counsel ordinarily must satisfy the requirements of *Strickland* … In *Cronic,* however, the Supreme Court identified three exceptions to the actual prejudice requirement—three exceptional circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658, 104 S. Ct. at 2046.
>
> Prejudice may be presumed under *Cronic* where, and only where: (1) there is a "*complete* denial of counsel" at a "critical stage" of the trial, (2) "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing," or (3) under the "circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Id.* at 659–61, 104 S. Ct. at 2047–48 (emphasis added); *see also Bell v. Cone,* 535 U.S. 685, 695–96, 122 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002) (discussing the three scenarios in which *Cronic* applies). As we have held, in an en banc decision, *Cronic*'s presumption of prejudice "applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Stano v. Dugger,* 921 F.2d 1125, 1153 (11th Cir.1991) (en banc).

*Castillo v. Florida, Sec'y of DOC*, 722 F.3d 1281, 1286 (11th Cir. 2013), *cert. denied*, *Castillo v. Crews*, 134 S. Ct. 1927 (2014).
 Lewis has alleged none of the "exceptional circumstances" that would justify application of *Cronic*'s presumption of prejudice in this matter.

[19] See *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir.2005) (failure to raise objections to matters contained in the PSI constitutes an admission of these facts).

order to spare his children from having to testify at trial." (Doc. 27 at 6, ¶ 14).[20] Lewis confirms this sentiment in his reply brief, admitting that, "with his undefended innocence in mind, and to protect his children from further badgering of interviewers, as well as Mr. Lewis' refusal to allow himself and his children to be tormented with false allegations before a Jury by his children over a custody battle the USA is well aware of." (Doc. 70 at 11). Thus, the record indicates that Lewis's concern for his children, rather than any alleged erroneous advice from his counsel, was his primary motivation to plead guilty.

For these reasons, Lewis is due no relief as to Claim 1.

## B.   *Brady Violation (Claim 3)*

Claim 3 alleges that the Government, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963),[21] withheld exculpatory information, namely:

1. information purportedly obtained by federal agents from interviewing Austin and Johnston – evidence which, if Austin and Johnston's affidavits are to be believed, would have refuted the Government's assertion that Austin was

---

[20] Counsel for the Government also alluded to this at the sentencing hearing, stating: "But realistically, a plea in this case avoided the necessity of the victims having to come in and testify and go through a trial. That's the reason for the low-end recommendation, and that's it. Otherwise, our recommendation would have been something much different." (Doc. 54 at 3).

[21] "*Brady* requires the prosecutor to turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under [Federal ]Rule[ of Criminal Procedure] 16(a), since, eventually, such evidence may undermine the confidence in the outcome of the trial." *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003) (citation and quotations omitted).

absent from Lewis's Gulfport residence on December 31, 2010, the day Lewis

is alleged to have committed the sexual assaults at issue; and

2. "statements from investigative files as well as Mobile County Human

Resources [H.R.] files where informations [sic] were known to the USA that

(i) Lewis' purpose for the [T]rip, was to exercise his visiting rights, and (ii)

that the H.R. files reflect an extensive custody battle between Mr. and Mrs.

Lewis, which extends beyond … into Florida litigations." (Doc. 63 at 35).

The Eleventh Circuit has not yet addressed whether a *Brady* claim is waived

by a valid guilty plea, and courts are split on the subject.[22]  However, because Lewis

did not raise the claim on direct appeal, it is procedurally defaulted unless he can

show "either cause and actual prejudice or that he is actually innocent."  *Bousley*,

523 U.S. at 622 (citations and quotations omitted).  Lewis has argued both.[23]

---

[22] *Compare United States v. Matthews*, 168 F.3d 1234, 1242 (11th Cir.) ("We do not need to decide today … whether a guilty plea waives a defendant's claim under *Brady*, or—assuming that a *Brady* claim is not waived by a guilty plea—whether the Brady material must be known to the prosecution before the plea or merely before sentencing."), *opinion amended on other grounds on denial of reh'g, United States v. Moore*, 181 F.3d 1205 (11th Cir. 1999), and *Hill v. West*, 599 F. Supp. 2d 371, 388 n.3 (W.D.N.Y. 2009) (noting a split in authority whether *Brady* claim is foreclosed by a valid guilty plea), *with United States v. Ellsbury*, 528 F. App'x 856, 858 (10th Cir. 2013) (unpublished) ("The prosecution's failure to disclose information required under the constitutional principles announced in *Brady v. Maryland* can sometimes 'render a defendant's plea involuntary.' *United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994).").

[23] Lewis also asserts that the withheld material violated the *Jenks Act*, 18 U.S.C. § 3500. Not only is Lewis's *Jenks* claim, like his *Brady* claim, procedurally defaulted, it is without merit.  The *Jenks Act* never came into play in Lewis's criminal case, since it only "mandates that a statement by a prospective prosecution witness to an investigative agent or the grand jury must be provided to the defense **after the witness has testified on direct examination**." *Jordan*, 316 F.3d at 1251 (emphasis added).  Here, because Lewis pled guilty, there was no trial and thus no direct examination of any witness.  While a "prosecutor may turn [*Jencks* material] over before the witness is to testify" – "[i]ndeed, it is

The "cause and prejudice" "standard is 'a significantly higher hurdle than would exist on direct appeal.' " *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *Frady*, 456 U.S. at 166).  " 'Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Fordham v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013) (quoting *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010) (alteration and quotation marks omitted)).[24]

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  " '[C]ause and prejudice' … 'parallel two of the three components of the alleged *Brady* violation itself.'  Corresponding to the second *Brady* component (evidence suppressed by the State), a petitioner shows 'cause' when the reason for his failure to develop facts [on direct appeal ]was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement

---

customary in many jurisdictions for the government to produce *Jencks* materials prior to trial" – the Government is not required to do so.  *Id.* at 1252 n.78.

[24]  " 'Constitutionally ineffective assistance of counsel can constitute cause' under *Frady*" to excuse such a procedural default.  *Brown*, 720 F.3d at 1333 (quoting *Holladay v. Haley,* 209 F.3d 1243, 1254 (11th Cir. 2000)).  " 'In order to do so, however, the claim of ineffective assistance must have merit.' "  *Id.* (quoting *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000)).  As explained above, Lewis has not demonstrated a meritorious claim of ineffective assistance of counsel.

exists when the suppressed evidence is 'material' for *Brady* purposes." *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 282 (internal citation omitted)). *See also Brown v. United States*, No. 3:02 CR 14(HL), 2006 WL 1582421, at *2 (M.D. Ga. June 5, 2006) ("Normally, a petitioner is required to make this showing before a court will address the merits of the issue in question; however, here the components necessary to allege a *Brady* violation already include a 'cause' and 'prejudice' requirement. *See Banks v. Dretke*, 540 U.S. 668, 691 124 S. Ct. 1256, 1272 (2004). Therefore, if Petitioner can succeed in establishing a *Brady* violation, Petitioner will also automatically establish the 'cause' and 'prejudice' requirements necessary for overcoming the failure to assert this claim on direct appeal. *Id.*"); *Johnson v. United States*, 759 F. Supp. 2d 534, 539 (D. Del. 2011) ("When … the court is presented with procedurally defaulted *Brady* claims, a [§ 2255 ]movant demonstrates prejudice by satisfying the third component of the *Brady* standard, namely, by showing that the evidence was material for *Brady* purposes." (citing *Banks*, 540 U.S. at 691)).

"A defendant cannot meet [*Brady*]'s second prong when, 'prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged *Brady* material.' … In such cases, '[w]hen the defendant has equal access to the evidence[,] disclosure is not required' and 'there is no suppression by the government.' " *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014) (quoting *Maharaj v. Sec'y for Dep't of Corr.,* 432 F.3d 1292, 1315 & n.4 (11th Cir. 2005) (quotation marks omitted)), *cert. denied*, *Wright v. Jones*, 135 S. Ct.

36

2380 (2015).  *See also Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1334 (11th Cir. 2012) ("Evidence is not considered to have been suppressed if 'the evidence itself ... proves that [the petitioner] was aware of the existence of that evidence before trial.' " (quoting *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995)).  Lewis himself, with reasonable diligence, could have accessed evidence related to his custody battle and visitation rights from his own personal files and from court records (as he was able to do with the Judgment of Divorce). Accordingly, Lewis has not shown that the Government suppressed evidence on these matters in violation of *Brady*, *cf. LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1267-68 (11th Cir. 2005) ("In this case, defense counsel obviously could have obtained the defendant's *own* medical and school records by exercising reasonable diligence. Consequently, there is no *Brady* violation."), and has thus also not shown "cause" to excuse the procedural default of any alleged *Brady* violation based on this material.

The undersigned assumes, without deciding, that Lewis has shown "cause" for overcoming the procedural default of his *Brady* claim regarding interviews with Austin and Johnston, as his allegations indicate that Lewis himself could not have interviewed the women prior to pleading guilty because they had left Gulfport and Yelverton was unable to locate them.  *See Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam) ("...*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor[.]' " (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)) (alteration

added); *Baxter v. Thomas*, 45 F.3d 1501, 1506 (11th Cir. 1995) ("To establish a *Brady* violation, Baxter must prove … that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence…" (quotation omitted)).    However, Lewis must still show that he was prejudiced by the Government's failure to disclose any investigator notes or transcripts of these interviews.    Generally,

> to establish prejudice[ under *Brady*], [a defendant] ha[s] to prove that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial," does not establish prejudice. *United States v. Agurs,* 427 U.S. 97, 109–10, 96 S. Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

*United States v. Brester*, 786 F.3d 1335, 1339 (11th Cir. 2015).

"[A]lthough a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," it must be "show[n] that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Youngblood*, 547 U.S. at 870 (citation and quotations omitted).  *See also Hittson v. GDCP Warden*, 759 F.3d 1210, 1257 (11th Cir. 2014) ("While *Brady*'s materiality requirement 'is not a sufficiency of the evidence test,'—i.e., courts do not simply look to whether there is still enough evidence to support the result—a defendant must show 'that the favorable evidence could reasonably be taken to put the whole case in such a different light as to

undermine confidence in the verdict.' " (quoting *Kyles*, 514 U.S. at 434-35), *cert. denied, Hittson v. Chatman*, 135 S. Ct. 2126 (2015).

Here, however, because Lewis pled guilty, to demonstrate prejudice he must show that, had the Government disclosed the suppressed evidence, he would not have pled guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59; *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 662 n.4 (11th Cir. 2014) ("[T]he test for showing 'prejudice' under *Strickland* and 'materiality' under *Brady* are basically the same."); *Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) ("Generally, the test of materiality is whether the evidence 'undermines confidence in the outcome of *the trial*.' *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (emphasis added). When the accused enters a plea rather than proceeding to trial, however, materiality is determined by 'whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial.' *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995)."); *United States v. Nelson*, 979 F. Supp. 2d 123, 134 (D.D.C. 2013) (same).

Lewis has failed to show prejudice.  First, as explained previously, the record reflects that Lewis's primary reason for pleading guilty, as expressed in his own words, was to spare his children from having to testify or further participate in these criminal proceedings.  Second, Lewis himself had knowledge of, and could have testified to, the basic relevant facts contained in Austin and Johnston's affidavits, particularly Austin's alleged presence at the Gulfport residence on the

night of the assaults.  In spite of possessing this knowledge, Lewis instead chose to plead guilty.  Neither of these observations support a conclusion that Lewis would not have pled guilty and proceeded to trial <u>but for</u> the Government's alleged suppression of the interviews with Austin and Johnston.

Moreover, the exculpatory value of Austin and Johnston's testimony is weak at best.  *See Brester*, 786 F.3d at 1339 (mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish *Brady* prejudice).  Austin and Johnston's affidavits indicate that, had notes of their interviews been disclosed, they would have, at most, provided evidence that Austin was in fact present in Lewis's Gulfport residence the night of December 31, 2010, when the sexual assaults occurred, and was not away that night, as stated in Lewis's factual resume.  However, Austin and Johnston provide very little in the way of specific details regarding what they told Government investigators about that particular night, instead asserting only broad, conclusory beliefs that it would have been "virtually impossible" for Lewis to assault the children because Austin was "constantly together" with them during the week-long Christmastime visit to Gulfport.

Neither affidavit offers sufficient facts indicating that Austin kept a unwavering eye on Lewis and/or the children the night of the assaults such that the assaults could not have occurred without her knowledge.  *Cf. Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 793 (8th Cir. 2013) ("Coleman told Officer Wilder that the man he saw was not Burton, but he also said that he did not see *who* did

40

the shooting.  Thus, Coleman did not know if the man he saw was the shooter, and, hence, he was not able to say that *Burton* was *not* the shooter.  As such, Coleman's statement is not material to the issue of Burton's guilt or innocence, and it does not support Burton's *Brady* claims here.").  Additionally, any potential impact of Austin and Johnston's testimony must be compared to the potential impact of the testimony of Lewis's two daughters, each of whom experienced abuse, "witnessed the abuse[ of the other], and provided consistent statements to investigators" (Doc. 22 at 12), as well as the testimony of Lewis's stepson, who saw Lewis go into the girls' room alone the night of the assaults.  In sum, Lewis has failed to show that he was prejudiced by the Government's alleged suppression of interviews with Austin and Johnston.[25]

For these reasons, Lewis has failed to demonstrate "cause and prejudice" sufficient to overcome the procedural default of any of his *Brady* claims.  Because "cause and prejudice" parallel two of the three necessary components of a *Brady* violation, Lewis has therefore also failed to demonstrate a meritorious *Brady* claim. As such, the undersigned need not address Lewis's arguments to excuse procedural default based on "actual innocence" because, as explained below, a showing of "actual innocence" merely entitles a § 2255 movant to a merits consideration of an otherwise procedurally-defaulted claim.

For these reasons, Lewis is due no relief as to Claim 3.

---

[25] Lewis has also argued that Austin and Johnston's testimony would have further bolstered his contention that the purpose of the Gulfport trip was to exercise Lewis's visitation rights.  For the reasons explained previously regarding § 2423(a)'s "intent" element, Austin and Johnston's testimony is not "material" in this regard, and thus Lewis has not shown prejudice from its alleged suppression.

### C.    *Free-Standing Actual Innocence Claim (Claim 2)*

In Claim 2, Lewis asserts a free-standing claim that he is actually innocent of the crime to which he pled guilty, on the basis that "(a) newly discovered evidence establishes that Lewis' District Court appointed attorney and the United States withheld evidence exculpatory to the elements of the offense for which Lewis has been charged; (b) Lewis' guilty plea was involuntary due to misguidance; (c) the Court accepted the plea without factual basis."  (Doc. 65 at 5).  However, "[a]ctual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar" for bringing an otherwise-defaulted claim in a § 2255 proceeding. *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) (per curiam) (citing *Bousley*, 523 U.S. at 622).  *See also Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1273 (11th Cir. 2010) ("Under *Schlup* a showing of actual innocence 'does not by itself provide a basis of relief.'  [513 U.S.] at 315, 115 S. Ct. at 861.  Instead, it is merely 'a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits.'  *Id.* (quotation marks omitted) … 'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'  *Herrera*[ *v. Collins*], 506 U.S. [390,] 400, 113 S. Ct. [853,] 860[ (1993)].").

Even if Lewis were allowed to assert actual innocence as a stand-alone claim, however, such a claim would fail.  "To show actual innocence of the crime of

conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (quotation marks omitted). "[T]he actual innocence exception is a *narrow* exception[,]" and, for purposes of the exception, " ' "actual innocence" means *factual* innocence, not mere legal insufficiency.' " *Id.* at 1197-98 (quoting *Bousley*, 523 U.S. at 623 (emphasis added)).

Here, none of Lewis's alleged "new evidence" meets this standard. As explained previously, the Judgment of Divorce, at most, merely establishes that <u>one</u> purpose of Lewis's trip from Alabama to Mississippi and back was to exercise his visitation rights, and a reasonable juror could still have found that Lewis had the requisite intent to sexually assault his children when he made the trip. While Austin and Johnston's testimony claims that Austin was "constantly" with Lewis and the children during the trip, including the night of December 31, 2010, and that as such it would have been "virtually impossible" for Lewis to have committed the assaults, a reasonable juror could have drawn the conclusion that such statements were hyperbole and that there were times when Austin was not aware of what Lewis and the children were doing on the night of December 31, 2010, even if she was present in the Gulfport residence at that time. For instance, as the Government suggests, "the assault likely could have occurred while Austin herself was asleep in a different room…" (Doc. 69 at 6). Moreover, to the extent Austin and Johnston's testimony attempts to provide Lewis an alibi for the night of

December 31, 2010, a reasonable juror could have rejected their testimony in favor of the testimony of Lewis's minor daughters detailing the abuse that night, and the testimony of Lewis's then-stepson that he witnessed Lewis go into the girls' room that night.

Accordingly, Lewis is due no relief as to Claim 2.

## D.   *Subject Matter Jurisdiction (Claim 4)*

Finally, in Claim 4, Lewis claims that the Court lacked subject matter jurisdiction to convict him. *See United States v. Thompson*, 702 F.3d 604, 606 (11th Cir. 2012) ("While an unconditional guilty plea acts as a waiver of all non-jurisdictional challenges to a conviction, challenges to subject matter jurisdiction cannot be waived." (citing *United States v. Betancourth*, 554 F.3d 1329, 1332 (11th Cir. 2009)). " '[D]istrict courts ... have original jurisdiction ... [over] all offenses against the laws of the United States.' " 18 U.S.C. § 3231; *see also* U.S. Const. art. III, § 2 ('The judicial Power shall extend to all Cases ... arising under ... the Laws of the United States.')." *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008). *Accord United States v. Vargas*, 563 F. App'x 684, 686 (11th Cir. Apr. 17, 2014) (per curiam) (unpublished) ("Federal district courts have jurisdiction over offenses against the laws of the United States." (citing 18 U.S.C. § 3231)). "Here, the Government charged [Lewis] with an offense against the laws of the United States, so absent a separate limit on subject matter jurisdiction, the district court had authority to adjudicate whether" Lewis violated 18 U.S.C. § 2423(a). *De La Garza*, 516 F.3d at 1271. Lewis has identified no separate limit, and the

undersigned is not aware of any.  Nor has Lewis argued that "the indictment fails to charge an offense that implicates the district court's jurisdiction…" *Thompson*, 702 F.3d at 606.  Rather, Lewis has simply repackaged his other claims for relief (which the undersigned has rejected, *see supra*) into Claim 4 with a "subject matter jurisdiction" label.[26]

Accordingly, Lewis is due no relief as to Claim 4, and his § 2255 motion is due to be **DENIED** without an evidentiary hearing.

### E.    *Certificate of Appealability*

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** for Lewis's § 2255 motion. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a

---

[26]      In his reply brief, Lewis argues that his actions do not fall within § 2423's definition of "illicit sexual conduct" as, *inter alia*, "a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States…"  18 U.S.C. § 2423(f)(1).  Specifically, Lewis argues that the place of the crime, "his own home, in the sovereign Jurisdiction of his State of Mississippi[,]" does not fall within the "special maritime and territorial jurisdiction of the United States." (*See* Doc. 70 at 9 – 10).  Thus, he concludes, only the state of Mississippi had jurisdiction to prosecute him for the sexual assaults.
      Leaving aside Lewis's strained interpretation of § 2423(f)(1), his reliance on that provision is misplaced, as a showing of "illicit sexual conduct" as defined in § 2423(f) is not an element of an offense under § 2423(a).

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

"A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).  The undersigned finds that reasonable jurists could not debate whether Lewis's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.  Insofar as the undersigned has recommended dismissal of certain

claims as procedurally barred, the undersigned also finds that jurists of reason would not find such a procedural ruling debatable. Accordingly, Lewis is not entitled to a Certificate of Appealability on any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011);[27] *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

### F.    *Appeal In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3). A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether

---

[27] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.).

an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any

appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

In light of the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by Lewis in this action would be without merit and therefore not taken in good faith and, accordingly, find that Lewis is not entitled to appeal *in forma pauperis*.

## V.   Conclusion

In accordance with the foregoing analysis, it is **RECOMMENDED** that Lewis's § 2255 motion (Doc. 65) be **DENIED** without an evidentiary hearing and **DISMISSED with prejudice**.   Should that recommendation be adopted, it is further **RECOMMENDED** that Lewis be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## VI.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the

time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 5th day of October 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**